UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DARYL OVERKA, DEREK BASZKIEWICZ, KEVIN CORRIGAN, KENNETH LEONE, PETER FREDDURA, ANTHONY CARMOSINO, MARC BENNETT, JORGE MARTINEZ, ROBERT MONZIONE, DANA YOUNG, VESSELLE MULBAH, ANTHONY CACCIOLA, DON DIFIORE, RITSON DESROSIERS, MARCELINO COLETA, TONY PASUY, LAURENCE ALLSOP, ANDREA CONNOLLY, DEREK WATSON, MICHAEL HOOD, NELSON STOOT, JAMES BROOKS, ROY HARPER, RONALD FORD, BRIAN SCHALK and all others similarly situated,

Plaintiffs,

v.

AMERICAN AIRLINES, INC.,

Defendant.

CIVIL ACTION
NO. 08-10686-WGY

MEMORANDUM AND ORDER

YOUNG, D.J. February 4, 2010

## I. INTRODUCTION

The named plaintiffs bring a putative class action against American Airlines, Inc., ("American") on behalf of skycaps working at Logan Airport in Boston, Massachusetts, and at other airports served by American throughout the United States, who were affected by American's imposition of a $2 per bag charge for

curbside check-in services (the "Skycaps"). On behalf of the alleged nationwide class, the Skycaps bring common law claims of tortious interference with contractual or advantageous relationship and unjust enrichment. Am. Compl. Counts 3, 4. The Skycaps' motion for certification of a nationwide class is presently before the Court.

## II. BACKGROUND

Traditionally, the Skycaps earned their living primarily from passengers' tips. Am. Compl. ¶ 34. In 2005, American implemented a $2 per bag fee for the Skycaps' services at the majority of its terminals in the United States. Id. ¶¶ 35-36. Many passengers were unaware that the fee was not a tip to the Skycaps, id. ¶ 40, but rather revenue retained by American, id. ¶ 38. After the implementation of the charge, few passengers tipped on top of the fee and, as a result, the Skycaps' compensation fell dramatically. Id. ¶ 39. The Skycaps claim that American's actions constitute tortious interference with the Skycaps' prospective business relationships and unjust enrichment.[1]

In 2007, this Court presided over a jury trial on nearly identical claims brought against American by ten skycaps, nine

[1] Massachusetts skycaps also have individual claims for violations of the Massachusetts Tips Law, Mass. Gen. Laws ch. 149 § 152A, and retaliation under the Massachusetts General Laws chapter 149, section 148A.

from Massachusetts and one from Missouri. DiFiore v. American Airlines, Inc., No. 07-10070. The jury found that American’s $2 per bag charge violated the Massachusetts Tips Law, constituted tortious interference with advantageous relationships under the common law, and awarded damages to the named Massachusetts skycaps. DiFiore, No. 07-10070, Jury Verdict, Apr. 7, 2008. The jury, however, did not award recovery to the Missouri plaintiff, who, unlike the Massachusetts skycaps did not have a statutory claim. Id. In the DiFiore case, the skycaps similarly moved for certification of a nationwide class and a Massachusetts subclass. DiFiore, No. 07-10070, Pls.’ Mot. for Class Certification [Doc. No. 44]. The Court denied certification of the Massachusetts subclass for lack of numerosity. DiFiore, No. 07-10070, Class Certification Hr’g Tr. 4:19, June 26, 2007. The Court also denied certification of the nationwide class as unmanageable in light of differences in the laws of the thirty-four jurisdictions. DiFiore, No. 07-10070, Class Certification Hr’g Tr. 7:23-25, Sept. 11, 2007.

## III. ANALYSIS

### A. Framework for analysis

The Court has substantial discretion in ruling on class certification. Reiter v. Sonotone Corp., 442 U.S. 330, 345 (1979); McCuin v. Sec’y of Health and Human Servs., 817 F.2d 161, 167 (1st Cir. 1987). The prerequisites of Federal Rule of

Civil Procedure 23, however, must be met. Rule 23(a) states that the class will be certified only if:

> (1) the class is so numerous that joinder of all members is impractical [numerosity requirement]; (2) there are questions of law or fact common to the class [commonality requirement]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality requirement]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy requirement].

Fed. R. Civ. P. 23(a). In addition, a party seeking certification must show that the action is maintainable under the Rule 23(b)(1), (2), or (3). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that (2) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**B. Rule 23(a)**

**1. Numerosity**

"Numerosity is established if the size of a proposed class, even if inexactly determined, is sufficiently large as to make joinder impracticable, given the relevant circumstances." In Re Relafen Antitrust Litig., 221 F.R.D. 260, 266 (D. Mass. 2004). "[D]istrict courts may draw reasonable inferences from the facts presented to find the requisite numerosity." McCuin, 817 F.2d at 167.

The Skycaps claim that American instituted the $2 charge at the majority of airports where American has terminals. Am. Compl. ¶ 36. Citing to the U.S. Department of Transportation’s website, the Skycaps assert that American operates at more than eighty-five airports in the United States. See Mem. in Supp. Mot. for Class Certification at 6, Ex. 2 [Doc. No. 32]. The Skycaps further propose that a minimum of five skycaps work for American at each airport and thus, arrive at several hundred potential members for the class. Id. American does not contest these calculations.

Under these circumstances, it seems impracticable to join all affected skycaps. Thus, the numerosity requirement is satisfied.

**2. Commonality**

The commonality threshold is relatively easy to meet. In Re Relafen Antitrust Litig., 231 F.R.D. 52, 69 (D. Mass. 2005). Rule 23(a)(2) does not require that all issues be common for the class. Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 25 (D. Mass. 2003) (Gertner, J.); Margaret Hall Foundation, Inc. v. Atlantic Financial Mngmt, Inc., 1987 WL 15884, at *2 (D. Mass. 1987) (Skinner, J.).

The present case arises out of the $2 curbside check-in fee that was implemented uniformly in the majority of American’s terminals nationwide and affected skycaps working throughout the

country in a similar way. Where, as here, implementation of the common scheme is alleged, the commonality requirement usually is satisfied. Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) ("Commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."); Green v. Wolf Corp., 406 F.2d 291, 300 (2d Cir. 1968); Singer v. AT&T Corp., 185 F.R.D. 681, 688 (S.D. Fla. 1998) (listing cases). In the present case, questions of law and fact common to all members will include: whether there was an expectation of advantageous relationships between the Skycaps and passengers who used curbside check-in service; whether American knew about such future relationships; whether American's implementation of the $2 charge interfered with these relationships; whether American intended so to interfere; whether American had an improper motive (such as to benefit at the Skycaps's expense); whether American used improper means (such as misrepresenting the nature of the fee); whether the way American charged the fee is itself misleading; whether customers mistake the fee for a tip; and whether the policy was unjust. American correctly notes that the issue of damages will be individual for each skycap and the issue of adequacy of notice that the $2 fee is not a tip will vary from airport to airport. It also correctly points out differences in the common law of tortious

interference and unjust enrichment of the different states.[2] These individual issues, however, will not defeat commonality, at least as to liability, since there are a substantial number of liability issues that are common to the class.

**3. Typicality**

To satisfy the typicality requirement, the claims of all members need not be identical, but they all must arise out the same practice and should be based on the same legal theory. In Re Relafen, 231 F.R.D. at 69; Gorsey v. IM Simon & Co., 121 F.R.D. 135, 138 (D. Mass. 1988) (Zobel, J.); Margaret Hall Foundation, 1987 WL 15884, at *2.

Skycaps throughout the country were affected by the implementation of the $2 fee in the same way. The skycap representatives bring claims of tortious interference and unjust enrichment which are typical for all class members. They are recognized in some form in all jurisdictions and therefore available for all skycaps. Thus, the typicality requirement is satisfied.

**4. Adequacy**

The adequacy requirement has two factors: (1) that no potential conflicts exist between the named plaintiff and the

[2] The question whether the differences in state law are sufficient to defeat class certification is addressed in the context of whether common questions predominate over individual differences.

class members and (2) that "counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985); Adair v. Sorenson, 134 F.R.D. 13, 18 (D. Mass. 1991) (Harrington, J.). With certain exceptions,[3] the named plaintiffs are situated similarly to all other skycaps working for American. They bring the same claims as the potential class members and there is no potential conflict between them and other potential class members. Furthermore, counsel chosen by the plaintiffs is well qualified and experienced in class actions on behalf of employees in the service industry. The Skycaps' counsel represented skycaps in nearly identical litigation before the Court. DiFiore, No. 07-10070. The Court concludes that the adequacy requirement is satisfied.

[3] Named plaintiffs Don DiFiore, Ritson Desrosiers, Marcelino Coleta, Tony Pasuy, Laurence Allsop, Andrea Connolly, and James Brooks have already obtained a judgement in the related DiFiore litigation. DiFiore, No. 07-10070, Judgment, Apr. 16, 2008. Their interests are thus not aligned with those of other plaintiff representatives as they, but not the other named plaintiff representatives, are subject to potential defenses of res judicata, claim splitting, and accord and satisfaction. The Court assumes the remaining named plaintiff representatives desire to press ahead on a class basis and continues its analysis on that basis, expecting the plaintiffs just named will be dropped as named plaintiff representatives. They may continue as class members because any individual defenses, if any may be adjudicated at the damages stage.

**C. Rule 23(b)(3)**

Rule 23(b)(3) gives a non-exhaustive list of factors for evaluation of the predominance and superiority requirements:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Rule 23(b)(3). These factors are best analyzed under the rubrics of "predominance" and "superiority."

**1. Predominance**

To establish predominance under Rule 23(b)(3), the Skycaps must demonstrate that the proposed class is "sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997). The First Circuit has held that this requirement is satisfied where, notwithstanding individualized concerns, "a sufficient constellation of common issues binds class members together." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000). The "determination of predominance" necessarily implicates the judge's discretion, "because [it] requires a common sense judgment regarding what the case is really about, and whether it would be more efficient to try the case as a class suit." Margaret Hall Foundation, 1987 WL 15884, at *4. Having the benefit of presiding over the nearly identical DiFiore case,

the Court looks at the predominance question with a more complete understanding of the issues that will be brought up in the present case.

The most significant issue with respect to the certification of a nationwide class is whether differences in state law are sufficiently significant to preclude class certification.  The burden falls on the plaintiffs, as the proponents of class certification, to show that the common law of the relevant states is substantially similar.  See Castano v. American Tobacco Co., 84 F.3d 734, 741-42 (5th Cir. 1996).  Both the Skycaps and American produced a detailed comparative analysis of the law of thirty-four states with respect to the common law claims of tortious interference and unjust enrichment.  American went further and looked at the wage laws of each state, including whether the different states each had a tips law.[4]

---

[4] This Court has previously recognized that each state's wage laws are substantially different and will prevent class certification on unjust enrichment and tortious interference claims when these claims are based on wage law violations. DiFiore, No. 07-10070, Class Certification Hr'g Tr. 7:23-8:17, Sept. 11, 2007.  The present case is different, however, since Skycaps' counsel stipulated that the Skycaps will not base their claims for tortious interference and unjust enrichment on the wage laws of the different jurisdictions.  DiFiore, No. 07-10070, Class Certification Hr'g Tr. 8:3-5, Nov. 16, 2009.  The Court accepts this stipulation and will hold the Skycaps to it. Proceeding in this way, of course, glosses over the issue of the rights of the putative class members to proceed individually on the basis of their individual state's wage laws.

The question before the Court here is not whether the laws of multiple states are identical, but whether the Court can manage the differences.  In a similar case, Judge Gertner approved a multistate settlement class, stating that "variance in the state law does not disrupt the 'commonality' and 'predominance' requirements of [Rule 23(b)(3)]."  Mitchell v. U.S. Airways. Inc., No. 08-10629 (D. Mass. Sept. 24, 2009) (Gertner, J.) (order granting motion for settlement approval). American correctly notes, however, that approval of a settlement class does not require the Court to enquire into the potential manageability concerns.  American claims that this case presents precisely the type of manageability problem that precludes certification of a multistate class.

The Court analyzed the common law of the thirty-four states where American offers skycap services.  See DiFiore, No. 07-10070, Mot. for Class Certification, Ex. A [Doc. No. 44], Class Certification Hr'g Tr. 5:23, Nov 16, 2009.  The Court proposes to manage this case in the following way: the Court will try all Skycaps as one group and will not create subclasses with separate jury instructions for each subclass.  Instead, the Court will put before the jury a core claim composed of the elements common to all jurisdictions.  Because in some jurisdictions there are additional elements required to establish liability, the Court will ask the jury special questions in accordance with any

additional elements. The jury will make determinations of fact whether the core claim is satisfied and whether each of the special questions is satisfied. On the basis of these determinations, the Court will apply the law of each jurisdiction and decide in which, if any, jurisdictions the Skycaps prevail.

**a. Unjust enrichment**

The Skycaps argue that common law claims for unjust enrichment in all jurisdictions at issue are substantially similar. They propose that any unjust enrichment claim contains these core elements: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant appreciated or knew of the benefit, and (3) the defendant accepted the benefit under such circumstances as to make non-payment inequitable. American disputes this contention and states that unjust enrichment claims vary from state to state. It does not, however, point to any particular difference.

Courts have noted that unjust enrichment claims in different states are substantially similar. In re Terazosin Hydrochloride, 220 F.R.D. 672, 697 n. 40 (S.D. Fla. 2004) (citing Singer v. AT&T Corp., 185 F.R.D. 681, 692 (S.D. Fla. 1998)). The cause of action is based on common law principles explained in the Restatement (Third) of Restitution and Unjust Enrichment section 1 (Tentative Draft, 2000). This Court has previously certified a multistate settlement class upon an unjust enrichment claim. In

Re Relafen, 221 F.R.D. at 278-80.  In that case, this Court held

that common law claims for unjust enrichment in Arizona,

California, Florida, Kansas, Maine, Michigan, Massachusetts,

Minnesota, New York, North Carolina, Tennessee, and Vermont are

substantially similar.  The Court stated that three core

requirements (the same as proposed by the Skycaps here), which

originated from equitable principles laid out in the Restatement,

are common to all these jurisdictions.  Id. at 279-80.  In the

present case, having analyzed the laws of the thirty-four

jurisdictions, the Court rules that they are substantially common

and the differences between them are manageable.

First, each state requires enrichment of the defendant at

the expense of plaintiff.[5]  Arizona and Louisiana present this

---

[5]  See Portofino Seaport Village, LLC v. Welch, 4 So. 3d
1095, 1048 (Ala. 2008); City of Sierra Vista v. Cochise
Enterprises, Inc., 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984);
Hatchell v. Wren, 211 S.W.3d 516, 522 (Ark. 2005); Lectrodryer v.
SeoulBank, 77 Cal. App. 4th 723, 726 (Cal. Ct. App. 2000); Dove
Valley Business Park Assocs., Ltd. v. Board of County Comm'rs of
Arapahoe County, 945 P.2d 395, 403 (Colo. 1997); Ayotte Bros.
Const. Co. v. Finney, 680 A.2d 330, 332 (Conn. App. Ct. 1996);
News World Commc'ns, Inc. v. Thompsen, 878 A.2d 1218, 1222 (D.C.
2005); Hillman Const. Corp. v. Wainer, 636 So. 2d 576, 577 (Fla.
Dist. Ct. App. 1994); Engram v. Engram, 463 S.E.2d 12, 15 (Ga.
1995); Small v. Badenhop, 701 P.2d 647, 654 (Haw. 1985); People
ex rel. Hartigan v. E & E Hauling, Inc., 607 N.E.2d 165, 177
(Ill. 1992); Bayh v. Sonnenburg, 573 N.E.2d 398, 408 (Ind. 1991);
State, Dept. of Human Services ex rel. Palmer v. Unisys Corp.,
637 N.W.2d 142, 154-55 (Iowa 2001); Transportation Ins. Co. v.
Leavines, 656 So. 2d 720, 721 (La. Ct. App. 1995); Berry & Gould,
P.A. v. Berry, 757 A.2d 108, 133 (Md. 2000); Santagate v. Tower,
64 Mass. App. Ct. 324, 329 (2005); B & M Die Co. v. Ford Motor
Co., 421 N.W.2d 620, 622 (Mich. Ct. App. 1988); Acton Const. Co.
v. State, 383 N.W.2d 416, 417 (Minn. Ct. App. 1986); Lucent

element as three different requirements (enrichment, impoverishment, and a connection between them). The substance, however, remains the same. City of Sierra Vista v. Cochise Enterprises, Inc., 697 P.2d 1125, 1131 (Ariz. Ct. App. 1984); Transportation Ins. Co. v. Leavines, 656 So. 2d 720, 721 (La. Ct. App. 1995). Second, all states require that the defendant retain the benefit. See cases cited, supra, note 4. A majority of the states at issue expressly require that defendant know of and appreciate the benefit. See, e.g., Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005). Others do not. See, e.g., Ayotte Bros Const. Co. v. Finrey, 680 A.2d 330, 332 (Conn. App. Ct. 1996). This difference, though it appears insubstantial in this case as American's knowledge of the benefit

---

Techs., Inc. v. Mid-West Elects., Inc., 49 S.W.3d 236, 241 (Mo. Ct. App. 2001); Topaz Mut. Co., Inc. v. Marsh, 839 P.2d 606, 613 (Nev. 1992); VRG Corp. v. GKN Realty Corp., 641 A.2d 519, 526 (N.J. 1994); Romero v. Bank of the Southwest, 83 P.3d 288, 296 (N.M. Ct. App. 2003); Lake Minnewaska Mountain Houses Inc. v. Rekis, 259 A.D.2d 797, 798 (N.Y. App. Div. 1999); Southeastern Shelter Corp. v. BTU, Inc., 572 S.E.2d 200, 206 (N.C. Ct. App. 2002); Hambleton v. R.G. Barry Corp., 465 N.E.2d 1298, 1302 (Ohio 1984); Lapkin v. Garland Bloodworth, Inc., 23 P.3d 958, 961 (Okla. Civ. App. 2000); Volt Servs. Group, Div. of Volt Mgmt. Corp. v. Adecco Employment Services, Inc., 35 P.3d 329, 337 (Or. Ct. App. 2001); AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. Ct. 2001); Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006); Freeman Indus., LLC v. Eastman Chem. Co., 172 S.W.3d 512, 525 (Tenn. 2005); Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc., No. 05-OY-00654, 2009 WL 3177570, at *10 (Tex. Ct. App. 2009); Desert Miriah, Inc. v. B & L Auto, Inc., 12 P.3d 580, 582 (Utah 2000); Schmidt v. Household Finance Corp., 661 S.E.2d 834, 838 (Va. 2008); Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc., 810 P.2d 12, 18 (Wash. Ct. App. 1991).

is unlikely to be disputed, may be addressed by a separate question to the jury. Third, all jurisdictions require that retention of the benefit without payment would create an injustice. See cases cited, supra, note 4.

Overall, there are only a few differences in the description of unjust enrichment claims as between states. For example, North Carolina adds an explicit requirement that the benefit must not be conferred gratuitously. Southeastern Shelter Corp. v. BTU, Inc., 572 S.E.2d 200, 206 (N.C. Ct. App. 2002). Some states require that there be no other remedy at law. See, e.g., Transportation Ins. Co., 656 So. 2d at 721.

In sum, the Court can charge the jury as to the base claim of unjust enrichment, which can be stated as: enrichment of the defendant at the expense of the plaintiff under such circumstances that non-payment will be unjust. The Court would then go on and ask several special questions such as whether the defendant knew and appreciated the benefit; whether the benefit was conferred gratuitously; and whether other remedies are available for the plaintiff. The Court considers this to be a manageable way to address the claim for unjust enrichment.

**b. Tortious interference**

The Skycaps propose to follow the Restatement's definition of tortious interference, identifying as its core the following four elements: (1) the existence of a prospective business

relationship; (2) the defendant's knowledge of the prospective
relationship; (3) the defendant's intentional and improper
interference causing breach of the relationship; and (4) damage
to the plaintiff.  See Restatement (Second) Torts, § 766B (1979).
The Skycaps agree that not all states adopt the same standard,
pointing out one material difference: some states require
independently wrongful conduct.  Mem. in Supp. of Class
Certification at 13 n.12.  American, however, argues that the
differences are numerous and that only two states have expressly
adopted the Restatement's formulation.  Opp. to Class
Certification at 7-11 [Doc. No. 35].  The Court, after
comparative analysis, concludes that the majority of the
jurisdictions at issue follow principles laid out in the
Restatement and that the existing differences are manageable, as
explained below.

With respect to the first proposed element, all of the
states at issue, except Louisiana, recognize that not only
existing, but also prospective business relationships are
protected from tortious interference.[6]  The Skycaps, accordingly,

---

[6] Whight Sands Group, LLC v. PRS II, LLC, No. 1080312, 2009
WL 2841114, at *7 (Ala. 2009); Miller v. Hehlen, 104 P.3d 193,
202 (Ariz. Ct. App. 2005); United Built Homes, Inc. v. Sampson,
832 S.W.2d 502, 504 (Ark. 1992); Lowell v. Mother's Cake & Cookie
Co., 79 Cal. App. 3d 13, 17-18 (Cal. Dist. Ct. App. 1978);
Montgomery Ward & Co. v. Andrews, 736 P.2d 40, 47 (Colo. Ct. App.
1987); Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 761 A.2d 1268,
1275 (Conn. 200); Command Consulting Group, LLC v. Neuraliq,
Inc., 623 F. Supp. 2d 49, 51-52 (D.D.C. 2009); Ethan Allen, Inc.

do not bring a claim for tortious interference on behalf of the Louisiana plaintiffs. Pls.' Mem. in Supp. Mot. for Class Certification at 10 n.6. Moreover, several states require that the prospective relationship be with an identifiable party or a category of parties. See, e.g., Ethan Allen, Inc. v. Georgetown

---

v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994); Kirkland v. Tamplin, 645 S.E.2d 653, 655 (Ga. Ct. App. 2007); Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc., 148 P.3d 1179, 1218 (Haw. 2006); Belden Corp. v. InterNorth, Inc., 413 N.E.2d 98, 101 (Ill. App. Ct. 1980); Zoeller v. East Chicago Second Century, Inc., 904 N.E.2d 213, 220 (Ind. 2009); Nesler v. Fisher and Co., 452 N.W.2d 191, 195-96 (Iowa 1990); Volcjak v. Washington County Hosp. Ass'n, 723 A.2d 463, 479 (Md. Ct. Spec. App. 1999); Blackstone v. Cashman, 448 Mass 255, 260 (2007); P.T. Today, Inc. v. Comm'r of Office of Fin. and Ins. Servs., 715 N.W.2d 398, 422 (Mich. Ct. App. 2006); Hough Transit, Ltd. v. Nat'l Farmers Org., 472 N.W.2d 358, 361 (Minn. Ct. App. 1991); Healthcare Servs. of the Ozarks, Inc. v. Copeland, 198 S.W.3d 604, 614 (Mo. 2006); Consolidated Generator-Nevada, Inc. v. Cummins Engine Co., 971 P.2d 1251, 1255 (Nev. 1998); Singer v. Beach Trading Co., 876 A.2d 885, 895 (N.J. Super. Ct. App. Div. 2005); M & M Rental Tools, Inc. v. Milchem, Inc., 612 P.2d 241, 245 (N.M. Ct. App. 1980); Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1103 (N.Y. 2004); Robinson, Bradshaw & Hinson, P.A. v. Smith, 498 S.E.2d 841, 851 (N.C. Ct. App. 1998); Norwell v. Cincinnati, 729 N.E.2d 1223, 1237 (Ohio Ct. App. 1999); Boyle Servs., Inc. v. Dewberry Design Group, Inc., 24 P.3d 878, 880 (Okla. Civ. App. 2001); Porter v. OBA, Inc., 42 P.3d 931, 934 (Or. Ct. App. 2002); Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 471 (Pa. 1979); L.A. Ray Realty v. Town Council of Town of Cumberland, 698 A.2d 202, 207 (R.I. 1997); Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002); Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726 (Tex. 2001); Anderson Development Co. v. Tobias, 116 P.3d 323, 331 (Utah 2005); Cha v. Korean Presbyterian Church of Washington, 553 S.E.2d 511, 515 (Va. 2001); Pacific Northwest Shooting Park Ass'n v. City of Sequim, 144 P.3d 276, 280 (Wash. 2006); but see Constance v. Jules Albert Const., Inc., 591 So. 2d 1238, 129 (La. Ct. App. 1991) (quoting 9 to 5 Fashions Inc. v. Peter L. Spurney, 538 so. 2d 228, 234 (La. 1989)).

Manor, Inc., 647 So. 2d 812, 815 (Fla. 1994). The Court can address this difference through a special question to the jury.

With respect to the second proposed requirement, some states specifically require that the defendant have knowledge of the prospective business relationship, while others do not. See, e.g., id. at 814; Volcjak v. Washington County Hosp. Ass'n, 723 A.2d 463, 479 (Md. Ct. Spec. App. 1999). This is not a significant difference, because the requirement that a defendant intended to interfere with the relationship already subsumes such knowledge.

As to the third proposed element, all the states require proof that a defendant improperly (tortiously, maliciously, without justification) and intentionally interfered with the relationship. See cases cited, supra, note 5. Certain states explain that "improperly" may embody improper motive or improper means. See, e.g., Pacific Northwest Shooting Park Ass'n v. City of Sequim, 144 P.3d 276, 280 (Wash. 2006). Some jurisdictions require an absence of justification. See, e.g., Lowell v. Mother's Cake & Cookie Co., 79 Cal. App. 3d 13, 18 (Cal. Dist. Ct. App. 1978). Other jurisdictions use the term "malice" in describing their common law claims for tortious interference. See, e.g., Singer v. Beach Trading Co., Inc., 876 A.2d 885, 895 (N.J. Super. Ct. App. Div. 2005); Volcjak, 723 A.2d at 479. The Restatement, however, explains that the element of "malice" in

"the context and the course of the decisions make it clear that what is meant is not malice in the sense of ill will but merely 'intentional interference without justification.'" Restatement (Second) Torts, § 766 Cmt. s (1979); see, e.g., Singer, 876 A.2d at 895 (requiring that "the defendants' actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse"); Volcjak, 723 A.2d at 479 (explaining that actions must be "without right or justifiable cause on the part of the defendants (which constitutes malice)"). Therefore, the Skycaps correctly argue that these are all just linguistic differences. There is no material difference in this element.

There are, however, some material differences between the respective state laws regarding the element of intentional and improper interference. A number of states require a showing that the defendant's actions in interfering constituted an independent wrong. See, e.g., Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726 (Tex. 2001). At least one state requires that an improper motive be the sole motive of the defendant. Fikes v. Furst, 81 P.3d 545, 552 (N.M. 2003). Moreover, some states categorize justification as an affirmative defense, instead of pleading requirement. Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So. 2d 1143, 1153 (Ala. 2003). All these differences can be addressed through special questions to the jury.

Finally, with respect to the damage requirement, every
jurisdiction requires that the plaintiff actually suffered
damages.  See cases cited, supra, note 5.  The Court agrees with
American that if it had to calculate the individual damages of
each skycap during this already fairly complex case, individual
issues would predominate and the case would become unmanageable.[7]
A way to overcome this difficulty is to certify the class only as
to liability.  For liability to exist, the Skycaps need only
prove that they were harmed, but will not need to prove
individualized damages.

In sum, the Court can charge the jury as to the claim for
tortious interference with a prospective business relationship in
a manner that details the four core elements: the existence of
the prospective business relationship; the defendant's knowledge
of the relationship; intentional and improper interference, and
resulting damage.  The Court can further ask the jury special
questions, such as: whether there was independently wrongful
conduct by the defendant; whether the plaintiff had prospective
business relationships with an identifiable party or group of
parties; whether the defendant's sole motive was to harm

---

[7] In DiFiore, damages were established by relying upon
American's records as to the amount of fees collected by each
skycap.  DiFiore, No. 07-10070, 2009 WL 5103179, at *10.  This
was a fairly simple way of calculating damages, but American
strongly disputed this method of calculation in DiFiore and it is
not obvious that a new jury will find this method appropriate in
the present case.  Id.

plaintiffs; and whether the defendant’s actions were without justification.

Therefore, the common law of unjust enrichment and tortious interference is substantially similar throughout all jurisdictions at issue in this case. There are differences, but most of them do not concern dispositive issues, and the Court can accommodate all of the significant differences by special questions to the jury. By excising the issue of individualized damages, issues common to all class members will predominate. Thus, the predominance requirement is satisfied.

**2. Superiority**

A class action will be certified only if it is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). In the present case only a few skycaps from the several hundreds of the potential class members have filed lawsuits against American trying to protect their interests in court. DiFiore, 07-10070; Jones v. American Airlines, Inc., No. 5:08-cv-236 (E.D.N.C. 2008).[8]

[8] In that action, filed by Connie Jones and Stacy P. McCrae as a purported class action, the Court dismissed the claims for tortious interference. Because the question of the class certification was never reached by the court, that decision is without prejudice to other class members. Jones v. American Airlines, Inc., No. 5:08-cv-236 (E.D.N.C. Oct. 16, 2008) (order granting in part motion to dismiss).

Now that the American no longer charges the questionable fee in the same fashion, the individual interests of the Skycaps are monetarily not extensive and this lowers the likelihood of individual suits. See Amchem Products, 521 U.S. at 616. Further, due to numerosity concerns, it will not be possible to bring class actions in each state. See, e.g., DiFiore, No. 07-10070, Class Certification Hr'g Tr. 4:19, June 26, 2009 (denying certification of the Massachusetts class for lack of numerosity). Because individual or even state-wide class lawsuits are unlikely, the nationwide class action would enhance the likelihood of recovery for all skycaps. Furthermore, trying all the Skycaps together in one nationwide class action is likely to result in judicial economy.

The Skycaps also contend that class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis. Courts have considered risk of reprisal by an employer as weighing in favor of certification. See, e.g., Mullen v. Treasure Chest Casino, 186 F.3d 620, 625 (5th Cir. 1999); Edmonson v. Simon, 86 F.R.D. 375, 379 (N.D. Ill. 1980). The Court concludes that trying this case as a nationwide liability class is a superior method for adjudication of the controversy.

## IV. CONCLUSION

For the foregoing reasons, the Court strikes Don DiFiore, Ritson Desrosiers, Marcelino Coleta, Tony Pasuy, Laurence Allsop, Andrea Connolly, and James Brooks as named plaintiffs in the present case as they are not adequate representatives of the class.[9] With the excisions noted below,[10] the Court ALLOWS the Skycaps' motion to certify a nationwide class [Doc. No. 44] as to the issue of liability only.

SO ORDERED.

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE

---

[9] Having prevailed in DiFiore on their Massachusetts Tips Law claims, these individuals do not have the same financial interest in the outcome of this action as the other class members.

[10] The Louisiana skycaps are excluded from the class with respect to the tortious interference claim. See text supra. James E. Brooks, the losing plaintiff from Missouri in DiFiore No. 07-10070, Connie Jones, and Stacy P. McCrae, the losing plaintiffs in Jones, No. 5:08-cv-236, are excluded from the class just certified on the grounds of claim preclusion and claim splitting.