# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

DARYL OVERKA et al,                        )
and all others similarly situated,         )
                                           )
                                           )
                        Plaintiffs,        )     Civil Action No. 08-10686
                                           )
              v.                           )
                                           )
AMERICAN AIRLINES, INC.,                   )
                                           )
                        Defendant.         )
_____)


### PLAINTIFFS' OPPOSITION TO AMERICAN AIRLINES' MOTION TO DISMISS

The Court should deny American's motion to dismiss.[1]  As explained below, in

Northwest v. Ginsberg, -- U.S. –, 134 S.Ct. 1422 (2014), the U.S. Supreme Court broke

with its earlier precedent and expanded the exception to preemption that it first

announced in American Airlines v. Wolens, 513 U.S. 219 (1995).  Under this newly

expanded exception, Plaintiffs' claims escape preemption under the Airline Deregulation

Act ("ADA"), 49 U.S.C. § 41713(b)(1), because they are essentially challenging

American's "self-imposed" obligations, rather than external "state-imposed" obligations

(even though they are not stated as "simple breach of contract claims").  While rejecting

the plaintiff's argument that common law claims are never subject to preemption, the

Supreme Court in Northwest made clear that, in order to determine whether common

law claims are preempted, courts must engage in this analysis to determine whether

---

[1]     This case has been stayed since November 2011 due to American's bankruptcy filing.  Plaintiffs here filed a proof of claim in the bankruptcy court in New York.  In April 2014, by agreement of the parties, the bankruptcy court entered an order that the adjudication of the claims here proceed in this Court.  Any judgment in this case would then be subject to distribution pursuant to the bankruptcy plan that has already been approved by the bankruptcy court.

(regardless of whether they are "simple breach of contract claims") the claims challenge "self-imposed" or "state-imposed" obligations.

No court has yet grappled with this new standard because the Northwest decision has only recently been issued.  This argument has not been raised or disposed of by the First Circuit or the Supreme Court in the related litigation brought by skycaps in DiFiore v. American Airlines, C.A. No. 07-10070, 646 F.3d 81 (1st Cir. 2011), or Brown v. United Airlines, C.A. No. 08-10689, 720 F.3d 60 (1st Cir. 2013).[2]  Applying this new standard, discussed further below, this Court should deny American's motion to dismiss and allow the claims here to proceed because they challenge American's breach of its own self-imposed undertaking – namely, representing to customers that it was charging a tip for skycaps in the form of a $2 per bag charge on curbside check-in.[3]

---

[2]     Following the Supreme Court's ruling in Northwest, Plaintiffs in Brown and Mitchell v. U.S. Airways, C.A. No. 08-cv-10629, raised this argument with this Court, but the Court denied their motion without comment.  Plaintiffs understand the Court likely did not address the argument based on the posture of those cases at the time the argument was raised – final judgment had entered, and the Supreme Court had denied certiorari.  (Here, in contrast, the claims in this case are still live, and final judgment has not entered.)  However, this argument has not been substantively considered by any court, including the Supreme Court.  The Supreme Court issued Northwest on April 2, 2014, and it conferenced the Brown case on April 4, 2014; thus, there was not time between these two events for Plaintiffs to raise this argument with the Supreme Court and urge remand for consideration under this newly articulated standard in Northwest.

[3]     Plaintiffs agree with American that, under DiFiore and Brown, the primary prior argument they have raised to defeat preemption in these cases (i.e. that their statutory and common law claims challenging American's $2 per bag charge did not sufficiently relate to prices, routes, or services) has been rejected by the First Circuit, and this Court is now bound by that precedent.  That argument has not, however, been addressed by the Supreme Court because the Supreme Court denied certiorari in both DiFiore and Brown.  Plaintiffs hereby restate and incorporate by reference that argument in full in order to preserve it for further review, including potential review by the Supreme Court, should the Supreme Court take this matter up at last in this litigation.  See DiFiore, C.A. No. 07-10070 (Docs. 24, 194, 203), and Brown, C.A. No. 08-10689 (Docs. 38, 47, 62, 65) (as well as the First Circuit and Supreme Court briefing in those cases).
        Plaintiffs also agree with American that the secondary argument they have raised to defeat preemption (i.e. that common law claims simply do not fall within the scope of the ADA's preemption clause) has been rejected by the Supreme Court in Northwest.  Plaintiffs therefore do not press this argument.

On April 2, 2014, in <u>Northwest v. Ginsberg</u>, 134 S.Ct. 1422, the U.S. Supreme

Court held that a particular common law claim—breach of the implied covenant of good

faith and fair dealing—was preempted by the Airline Deregulation Act.  In doing so, the

Supreme Court did not adopt a broad-brush conclusion that all common law claims

brought against airlines (even those related to prices, routes, or services) are

preempted by the ADA.  Instead, the Court engaged in a detailed analysis to reach its

conclusion.  This analysis was a break from previous Supreme Court precedent.  The

analysis the Court employed considered whether the airline was alleged to have

violated a state-imposed obligation or instead a self-imposed obligation.  Previously, in

<u>American Airlines v. Wolens</u>, 513 U.S. at 233, the Court had carved out an exception to

ADA preemption for "simple breach of contract claims".  However, in <u>Northwest</u>, the

Court expanded the <u>Wolens</u> exception beyond "simple" breach-of-contract claims to <u>all</u>

common law claims that attempt to bring airlines to task for violating their own self-

imposed obligations, regardless of whether those allegations can be stated as simple

breach-of-contract claims.  Thus, the Court decided for the first time in <u>Northwest</u> that

other common law claims may implicate self-imposed obligations and that an analysis is

required to determine whether a common law claim is based on an alleged violation of a

self-imposed obligation, or instead a state-imposed obligation.

In <u>Wolens</u>, the Supreme Court held that breach of contract claims would not be

preempted by the ADA because "terms and conditions airlines offer and passengers

accept are privately ordered obligations and thus do not amount to a State's

'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision

having the force and effect of law'".  513 U.S. at 228-29 (internal citations omitted).

Thus, the Supreme Court held that "[a] remedy confined to a <u>contract's terms</u> simply holds parties to their agreements." <u>Id.</u> at 229 (emphasis added).  The Supreme Court described its holding to be that "the ADA permits state-law-based court adjudication of <u>routine breach-of-contract claims</u>", <u>id.</u> at 232 (emphasis added), and that "'the Act should not apply to <u>simple breach of contract claims</u>'", <u>id.</u> at 233 (emphasis added).

However, in <u>Northwest</u>, the Supreme Court engaged in a more nuanced analysis of the types of claims that would be preempted or escape preemption under the exception that was first announced in <u>Wolens</u>.  In <u>Northwest</u>, the Supreme Court analyzed whether a claim for breach of the covenant of good faith and fair dealing would be preempted.  The Court's analysis turned on "whether [the plaintiff's] implied covenant claim is based on a state-imposed obligation or simply one that the parties voluntarily undertook." <u>Northwest</u>, 134 S.Ct. at 1431.  In so doing, the Court expanded on the exemption that it began in <u>Wolens</u>; it explained that, while "[the airline] urge[s] us to hold that implied covenant claims are always pre-empted, and [plaintiff] suggests that such claims are generally not pre-empted, … the reasoning of <u>Wolens</u> neither dooms nor spares all such claims." <u>Id.</u>  The Court went on to explain that, going forward, in order to determine whether a common law claim escapes preemption under the <u>Wolens</u> exception, courts would need to analyze not simply whether the claim is a "simple" or "routine" breach-of-contract claim, as the Court had referred to in <u>Wolens</u>, but instead whether the basis of the claim may be "regarded as a state-imposed obligation" on the one hand, or a "self-imposed obligation" on the other hand.  In <u>Northwest</u>, the Court's analysis turned on the question of whether the State "allow[s] people to disclaim the obligation of good faith".  Concluding that the state law at issue there did not allow it to

be disclaimed, the Court held that the breach of good faith and fair dealing claim in that case was based on a state-imposed obligation and thus preempted.

Here, as the Court will recall, Plaintiffs' claims for unjust enrichment are quasi-contractual claims.  They are not based on any state-imposed obligation; instead, they are based on how the airline itself represented the charges to passengers.  Plaintiffs allege that the airline held out the $2 per bag charge to the public as a tip for the skycaps—because it made the charge look and feel like a tip (in that it was the same amount passengers were used to tipping the skycaps, it was cash only, it was collected directly by the skycaps, and despite this outward appearance, it did not adequately disclose to passengers that the charge was not in fact going to the skycaps as their tip).  Indeed, in denying the motion to dismiss the unjust enrichment claims in the similar case of DiFiore v. American Airlines, 483 F. Supp. 2d 121, 128 (D.Mass. 2007), the Court held that the pertinent question was whether "the $2 fees are really tips meant for the skycaps."

Although the plaintiffs in DiFiore and Brown did make an attempt to explain that their claims should fall under the Wolens exemption, that argument was not viable prior to Northwest, since the claims the skycaps have pressed are not "simple" or "routine" breach of contract claims.[4]  Instead, the claim is a more nuanced claim that the airline has violated its own self-imposed obligations, and that allegation is set forth through the quasi-contractual unjust enrichment claim.  Although this argument was not viable under Wolens (prior to Northwest), the argument now has merit in light of the Supreme Court's

---

[4]      Indeed, the First Circuit in Brown lumped all common law claims together in stating that "It cannot be gainsaid that common law functions as a set of binding standards of conduct."  Brown, 720 F.3d at 65.   The First Circuit thus did not predict the Supreme Court's turn in Northwest to recognize that some, but not all, common law claims are based on state-imposed standards.

decision in Northwest to expand the exemption to common law claims that more generally hinge on the airline's own self-imposed obligations.

Although not stated as a simple breach of contract claim, the unjust enrichment claim in this case is indeed a claim of the airline violating its own self-imposed obligation.  Although American will certainly try to claim that it never agreed that the $2 charge was a tip for the skycaps, that question would be for a jury to determine.  A jury could well determine that American established the $2 charge in the way that it did with the intention that passengers would believe it to be a tip for the skycaps, and pay it because they believed it was a tip for the skycaps.  Thus, the jury could believe that the American entered an agreement with passengers (for which the skycaps are third party beneficiaries) that the $2 charge would go to the skycaps, but that American simply breached its end of the agreement.

In a case filed against the car service Uber, raising a similar gratuity-related claim[5], a federal court in California recently recognized this argument, and denied the defendant's motion to dismiss a claim for breach of implied-in-fact contract.  See O'Connor et al v. Uber Technologies, Inc. et al, C.A. No. 13-3826 (Doc. 58) (N.D. Cal. Dec. 5, 2013).  The court recognized that the plaintiff drivers could establish an implied-in-fact contract between the defendant and customers, for which the plaintiffs were third party beneficiaries, by demonstrating:

> (1) facts and/or circumstances implying Uber's intent to collect gratuity from passengers as part of the service for which passengers are paying; and (2) facts and/or circumstances demonstrating the intent of Uber and the passengers to

---

[5]    In the Uber case, the plaintiffs alleged that it looked to passengers that a gratuity is included in their fare, but in fact, the entire gratuity (if any) is not remitted to the drivers.  In Uber, the defendant has denied that a gratuity is in fact collected.

benefit the drivers, or the intent of passengers to benefit the drivers which Uber must have understood.

Uber argues that the factual allegations fail to demonstrate an intent to enter into an implied agreement to remit tips to drivers, and that the allegations actually demonstrate the opposite because the Complaint alleges that it was Uber's practice not to tender the full amount of gratuities to Plaintiffs. Such a practice could demonstrate a lack of intent to enter into an agreement, or it could instead manifest a breach of an implied agreement, the existence of which is evidenced by Plaintiffs' allegations. . . . All of these are circumstances surrounding the alleged contract formation manifesting passengers' intent that the tips included in their fares would benefit drivers. Meanwhile, Uber's alleged statements to passengers that "gratuity is included," combined with tipping customs and the expectations of passengers, likewise demonstrate Uber's intent to collect passenger tips and to do so for the benefit of drivers. . . . Even if Uber did not subjectively intend for the gratuity to benefit the drivers, the company "must have understood that the promisee [passengers] had such intent," and the "objectively reasonable expectation of the promise [passengers]" would be that Uber intended to give the gratuity to the drivers.

O'Connor, at 19-20.  In this case, unjust enrichment as alleged by the plaintiffs is quite similar to the breach of implied-in-fact contract claim alleged by the Uber drivers, since it is based, not on the express words used by the parties, but their intentions as demonstrated through their actions.

Thus, the Court should deny American's motion to dismiss.  Under the state of the law as it came to exist on April 2, 2014, when the Supreme Court decided the Northwest case, the skycaps' claims are not preempted because, while not "simple" or "routine" breach-of-contract claims, their claims are based on a violation of the airline's own self-imposed obligation.[6]

---

[6]    As noted above in note 3, Plaintiffs also urge the Court to deny American's motion to dismiss on the ground that the claims in this case challenging American's $2 per bag charge did not relate to prices, routes, or services, and Plaintiffs incorporate by reference the full argument that has been made on that

Respectfully submitted,

DARYL OVERKA, et al.

By their attorneys,


 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, BBO # 640716
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street – 20th Floor
Boston, MA 02114
DATED:  June 4, 2014          (617) 994 – 5800


## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2014, I caused a copy of this document to be served by electronic filing with all counsel of record.

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, Esq.

---

point in the related DiFiore and Brown litigation.  Plaintiffs recognize, however, that the First Circuit rejected that argument, and Plaintiffs reassert the argument here in order to preserve it for further review.